UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN M. MORRIS, | ) | CASE NO. 5:12CV2358 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA GAUGHAN |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CAROLYN W. COLVIN, | ) | **Report and Recommendation of** |
| COMMISSIONER OF | ) | **Magistrate Judge** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Kathryn M. Morris ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and DISMISS Plaintiff's complaint in its entirety with prejudice:

**I.      PROCEDURAL AND FACTUAL HISTORY**

On August 20, 2009, Plaintiff filed an application for DIB, alleging disability beginning December 6, 2008.  ECF Dkt. #12 at 143-144[1].  The SSA denied Plaintiff's applications initially and on reconsideration.  *Id*. at 114-126.  Plaintiff filed a request for an administrative hearing and on March 10, 2011, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel.  *Id*. at 30-32, 127-129.  At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE").  *Id*. at 32.  On April 22, 2011, an ALJ issued a decision denying Plaintiff benefits.  *Id*. at 11-16.  Plaintiff filed a request for review of the decision and on July 25, 2012, the Appeals Council denied the request for review.  *Id*. at 1, 139.

On September 20, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On March 1, 2013, Plaintiff filed a brief on the merits.  ECF Dkt. #13. Defendant filed a brief on the merits on April 11, 2013, and Plaintiff filed a reply on April 25, 2013.  ECF Dkt. #s

---

[1]Page numbers refer to "Page ID" numbers in the electronic filing system.

13, 14, 15.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On April 22, 2011, the ALJ[2] wrote a decision determining that the relevant time period for determining whether Plaintiff was disabled for the purposes of the instant application was from her onset date of December 6, 2008 through her date last insured of December 31, 2008.  ECF Dkt. #12 at 11, 13.  The ALJ found that Plaintiff had engaged in substantial gainful activity during this short time period because her work history report indicated that she was a secretary for a property management company from 2006 through December of 2008 and her certified earnings report showed that she was employed during the last quarter of 2008 and was earning substantial gainful activity income.  *Id*. at 13.

In the decision, the ALJ considered Plaintiff's assertion at the hearing that her employer made accommodations for her during the relevant time period because Plaintiff's daughter had previously worked for the owner and the owner knew of Plaintiff's financial situation.  ECF Dkt. #12 at 13.  The ALJ found that office space that the employer allowed Plaintiff to stay at so that she could avoid driving back and forth from home to work was not an accommodation and neither were the employer's creation of a position for her or the switching of her duties after her hip surgery.  *Id*. at 14.  The ALJ quoted 20 C.F.R. § 404.1573(b) of the regulations entitled "[h]ow well you perform" and found that Plaintiff was performing substantial gainful activity because she performed work that was of use to her employer and performed it satisfactorily based upon the report of the human resources manager.  *Id*. at 13-14.

Despite finding that Plaintiff engaged in substantial gainful activity, the ALJ nevertheless proceeded to Step Two of the sequential evaluation and alternatively held that even if her employer did accommodate her work, Plaintiff's impairments were not severe.  ECF Dkt. #12 at 14.  The ALJ found that even though Plaintiff had the medically determinable impairments of osteoarthritis,

---

[2]  A different ALJ signed the decision than the one who held the hearing.  He indicated that he was signing for the original ALJ and the original ALJ's name is listed under that signature.  ECF Dkt. #12 at 16.  As Plaintiff points out, it is uncertain whether the original ALJ wrote the decision or whether the ALJ who signed for the original ALJ wrote the decision.

diabetes mellitus, hyperlipidemia and hypertension, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities for twelve consecutive months. ECF Dkt. #12 at 14. The ALJ noted that little medical evidence existed for the relevant time period and the medical evidence preceding Plaintiff's date last insured showed a normal neurological examination, uncomplicated diabetes, and no complaints by Plaintiff except of abdominal pain. *Id*. at 15-16.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI and DIB benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope

-3-

by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that could have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**V.      ANALYSIS**

Plaintiff first asserts that the ALJ erred at Step One of the analysis by finding that she engaged in substantial gainful activity from her alleged onset date to her date last insured.  ECF Dkt. #13 at 7.  She further contends that the ALJ erred by finding that she had to prove that she did not engage in substantial gainful activity for continuous twelve-month period. *Id*. at 9.  Plaintiff further asserts that the ALJ erred in finding that she was laid off from her employment. *Id*. at 10.  Lastly, Plaintiff contends that the ALJ erred in finding that her work was substantial because her employer accommodated the work for her due to her impairments. *Id*. at 8-9.

In order to be eligible for DIB, a claimant must have coverage, that is, be fully insured, at the time of her disability.  42 U.S.C. § 423(a)(c); 20 C.F.R. § 404.101(a).  The period of coverage ends on the date last insured, which is the last day that a claimant is eligible for DIB. *Id*.  In order to be entitled to DIB, a claimant must be "under a disability" within the meaning of the Social Security Act as of the date her insured status expired.  42 U.S.C. § 423(a)(1)(E), 42 U.S.C. § 423(d); 20

-4-

C.F.R. § 404.131(a); 404.320(b)(2).

At Step One of the sequential evaluation to determine entitlement to DIB, an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits. 42 U.S.C. § 423(f); *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996). If an ALJ finds that a claimant is working and engaging in substantial gainful activity, she will not be found to be "disabled" and the ALJ ends the sequential evaluation at this Step. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b). The burden rests with Plaintiff to show that she was not engaging in substantial gainful activity. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004).

In this case, the ALJ asked Plaintiff if December 6, 2008 was the last day that she worked, and she responded that it was. *See* ECF Dkt. #12 at 50. When the ALJ asked if Plaintiff had worked at all since December 6, 2008, Plaintiff responded that she had not. *Id.* In her disability report filed with the agency, Plaintiff indicated December 6, 2008 as the date that she became unable to work due to her injuries. *Id.* at 159. The ALJ also cited to a work history report submitted by Plaintiff, but Plaintiff supplies only the months and years as the dates that she worked. ECF Dkt. #12 at 166. For instance, she indicated on the form "2006 - 12/2008" for her most recent employment and she wrote "8-06 [to] 12-08" as the dates worked at her last employment in her work questionnaire dated October 5, 2009. *Id.* at 181. She also wrote on that form that she was "(not sure of dates?)." Plaintiff's dates on these forms are not inconsistent with Plaintiff's testimony that she last worked on December 6, 2008.

Defendant asserts that it was reasonable for the ALJ to assume that Plaintiff worked through December of 2008 because even if she stopped working on December 6, 2008, substantial evidence supports the finding that Plaintiff stopped working for reasons unrelated to her disability. ECF Dkt. #14 at 8-9. Plaintiff contends that the ALJ erred in finding that she was "laid off after December 2008." ECF Dkt. #13 at 7-9, citing ECF Dkt. #12 at 13-14. Plaintiff also asserts that the ALJ erred in finding that "there was no continuous 12-month period during which the claimant did not engage in substantial gainful activity" because no legal requirement exists that she make such a showing. ECF Dkt. #13 at 8-9, citing ECF Dkt. #12 at 14.

Plaintiff is correct that no legal requirement exists at Step One that she prove that she did not engage in substantial gainful activity for a continuous twelve-month period prior to her date last insured.  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(c).

As to Plaintiff's reasons for stopping work, the transcript of the ALJ hearing supports both the ALJ's finding that Plaintiff was laid off and Plaintiff's statement that she stopped working because she could no longer perform the job due to her impairments.  When the ALJ asked Plaintiff early on in the hearing why she left the job, she responded that she could no longer perform the job. *Id*. at 50.  However, the following conversation transpired between the ALJ and Plaintiff concerning Plaintiff's departure from her last job:

> A [Plaintiff]:   he made up a position for me - -
>
> Q:        So, you worked there - -
>
> A:        - - and gave me a job when he really wasn't advertising - -
>
> Q:        I see, so - -
>
> A:        - - for a job.
>
> Q:        - - you worked there for two years, but it wasn't really a job is that what you're saying?
>
> A:        Well, he - -, I worked, you know, I helped - -
>
> Q:        Okay.
>
> A:        - - keep the bookkeeping going and showing units and so forth, but he bent over backwards to get me - -
>
> Q:        Okay.
>
> A:        - - to stay there - -
>
> Q:        Were there other people doing that?
>
> A:        - - he knew that my husband didn't have a check coming in.
>
> Q:        Right, when you - -

-6-

A:      - - and - -

Q:      - - started in 2006?

A:      Yes. And when my husband was approved for the disability - -

Q:      Uh-huh.

A:      -- he went ahead and let me go because he knew that we'd have income.

Q:       Oh, is that when you got let go was when your husband was approved for disability?

A:      That had a lot to do with it, but –

Q:      Okay.

A:       -- yeah, he -- we had talked eight months before that and he says he couldn't keep paying me –

Q:      Okay.

A:       -- for doing what I was doing because most people had took -- had taken over my petition [sic], I couldn't even go to the bank because I hadn't drove because I couldn't use, you know, the pedals and so forth.

Q:      Okay. All right, well let's -- let's move on --

ECF Dkt. #12 at 58-60.

Regarding alleged accommodations in Plaintiff's work and whether the work was accommodated or constituted substantial work under the Social Security regulations, the ALJ cited to the proper regulation and found that Plaintiff's work was not accommodated because even the work that Plaintiff was performing was of use to her employer and she was performing that work satisfactorily.  ECF Dkt. #12 at 14.

While it is debatable whether substantial evidence supports all of the ALJ's Step One analysis, the undersigned recommends that the Court dismiss Plaintiff's complaint because substantial evidence supports the ALJ's alternative Step Two analysis that Plaintiff's impairments were not severe.  When substantial evidence supports the ALJ's alternative finding at Step Two, any error committed by the ALJ at Step One is harmless because it is inconsequential to the ultimate disability determination.  *See Cantu v. Astrue*, No. CV-10-335-CI, 2012 WL 553141 (E.D. Wash., Feb. 21, 2012), unpublished (even if ALJ erred in finding Plaintiff engaged in substantial gainful activity at Step One, error was harmless because alternative findings at subsequent steps in sequential

-7-

evaluation were properly supported); *Geister v. Astrue*, No. 09-347-KI, 2010 WL 2867954 (D.Or. July 20, 2010)(ALJ error in determining that claimant performed substantial gainful activity was harmless since ALJ proceeded through other steps of sequential process "to be thorough.").

At Step Two in the instant case, the ALJ found that while Plaintiff had the medically determinable impairments of osteoarthritis, diabetes mellitus, hyperlipidemia and hypertension, these impairments did not significantly limit her ability to perform basic work-related activities for twelve consecutive months.  ECF Dkt. #12 at 14.  The ALJ correctly defined "basic work activities" and noted that "very little medical evidence" existed in the record documenting these impairments prior to Plaintiff's date last insured.  *Id*. at 15-16.  The ALJ cited to June and July[3] 2008 medical records which listed Plaintiff's impairments and documented that Plaintiff had an uncomplicated diabetes diagnosis, a normal neurological examination, normal ranges of motion and no complaints of pain other than abdominal pain.  *Id*. at 16.  The ALJ further noted that most of the medical evidence in the record pertained either to times well before Plaintiff's alleged onset date or well after her date last insured.  *Id*.  Consequently, the ALJ found that the only relevant evidence was that which was discussed, which supported the decision to find that Plaintiff's impairments were not severe at Step Two during the relevant time period.  *Id*.

Plaintiff contends that substantial evidence does not support the ALJ's Step Two finding that her impairments were not severe.  ECF Dkt. #13 at 9.  She complains that the ALJ discussed only two medical records in making this determination and failed to identify a notation in both of those records that she was to follow up with a doctor who had recommended hip and knee replacements. *Id*. at 10.  She also contends that the ALJ failed to properly consider medical evidence post-dating her date last insured that was relevant to her condition preceding her date last insured.  *Id*.

At Step Two, the ALJ determines whether a claimant's impairments are severe and whether they meet the twelve-month durational requirement.  20 C.F.R. § 404.1520(a).  At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v.*

---

[3]  It appears that the ALJ mistakenly referred to medical notes from June 16, 2008 when they were actually dated July 16, 2008.  ECF Dkt. #12 at 16; ECF Dkt.#12 at 264-268.

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  The claimant must also show that she suffered from a medically severe impairment or impairments that lasted or could be expected to last for a continuous period of at least twelve months.  *Id.*  The Court must apply a de minimis standard in determining severity at Step Two.  *Id.* at 862.  An impairment or combination of impairments is not severe  "...if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. §404.1521(b).  An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Sec'y of Health and Human Servs*., 773 F.2d 85, 89-90 (6th Cir. 1985).  The goal of Step Two is to screen out totally groundless claims.  *Id.* at 89.

In order to establish eligibility for disability benefits, a claimant must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423(c) (1); *Moon*, 923 F.2d at 1182; *Higgs*, 880 F.2d at 862. Accordingly, "as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status." *Carter v. Comm'r of Soc. Sec.,* No. 5:12CV2321, 2013 WL 3940874, at *6 (N.D. Ohio, July 30, 2013), quoting *Forshee v. Comm'r of Soc. Sec*., 2012 WL 1672974 at * 8 (E.D.Mich. April 11, 2012). The Sixth Circuit has held that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin*., 88 Fed. Appx. 841, 845 (6th Cir .2004).  Medical evidence of new developments in a claimant's condition is generally not relevant, unless the evidence "relates back" to the claimant's limitations prior to the date last insured. *See Higgs*, 880 F.2d at 863; *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981).

Here, as noted by the ALJ, there is no medical evidence in the record concerning the relevant and relatively short time period in this case.  The ALJ addressed the closest medical evidence in time, dated June 4, 2008 and July 16, 2008, respectively.  ECF Dkt. #12 at 15-16.  The ALJ found that this evidence of a routine doctor visit showed an uncomplicated diabetes diagnosis and treatment, a normal neurological examination with normal ranges of motion, and no complaints of pain by

-9-

Plaintiff other than abdominal pain.  *Id*. at 16.

Plaintiff complains that the ALJ failed to discuss the notations in these medical records which indicated that she was to follow up with her doctor concerning the recommended replacements of her knees and hip.  ECF Dkt. #13 at 10.  However, the undersigned is uncertain as to what the ALJ should have discussed, since the notations made in Plaintiff's medical history merely indicated that she follow up with Dr. Balis for "knees, hips, recommended replacement."  ECF Dkt. #12 at 264, 267, 268.  Moreover, the medical assistant indicated in her notes on these dates that Plaintiff did not complain of any pain on that date, other than abdominal pain.  *Id*. at 268, 271.  Thus, these notes fail to establish the severity of Plaintiff's pain or the limitations resulting therefrom concerning the relevant time period in this case.

The next most recent medical notes are dated August 12, 2009, a year later, whereby Plaintiff complained of constant severe left knee pain and frequent moderate to severe right knee pain.  ECF Dkt. #12 at 251-252.  She indicated to the orthopedic doctor that the pain began more than three years ago  around April 10, 1998.  *Id*. at 252.  The orthopedic doctor wrote a letter dated August 12, 2009 to the referring doctor, indicating that Plaintiff had severe arthritis in both knees and has "always been symptomatic" with left knee pain.  *Id*. at 253.  He further noted that "[n]ow, both are significantly symptomatic and affecting her quality of life and activities of daily living despite conservative care."  *Id.*  The doctor indicated that Plaintiff wanted to go forward with a recommended left knee replacement.  *Id*.

Plaintiff complains that the ALJ erroneously found that this later evidence was irrelevant even though the knee pain was found to be ongoing from an earlier time and she thereafter had a left total knee replacement on January 11, 2010 and a right total knee replacement in March of 2010.  ECF Dkt. #13 at 11.  Plaintiff points to the notations in the medical records in June and July of 2008 as evidence that the severity of her knee conditions had existed during the relevant time period since it was noted that a doctor had recommended that both knees needed to be replaced.  *Id*.  Again, however, substantial evidence supports the ALJ's finding that these later records were not relevant to the time period in this case because no medical record establishes that Plaintiff was significantly limited during the relevant time period.  Diagnoses and impairments eight months after Plaintiff's

date last insured provide no insight into Plaintiff's functional limitations during the relevant period. Moreover, the records that Plaintiff cites to as showing her osteoarthritis diagnoses in June of 2006 show that Plaintiff was working during this time. *Id*. at 270. While Plaintiff is correct that no evidence shows that her knee pain came about suddenly, ECF Dkt. #13 at 12, none of the medical evidence establishes when and the degree to which the knee impairments significantly limited her physical ability to do basic work activities.

Plaintiff also contends that her prior hip replacement, use of a cane and limited mobility resulting therefrom "are all indicative of medically determinable impairments causing functional limitations prior to the DLI." ECF Dkt. #13 at 10. However, again, this history shows that Plaintiff was able to work during this time period and it fails to show the extent of her pain and limitations during the relevant time period. Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's Step Two determination.

## VI.      CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety with prejudice.


DATE: January 22, 2014

                                                        ___*/s/George J. Limbert*_____
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walter,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985); and Local Rule 72.3